ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA 2010 MAR 25 AM 10: 03

DUBLIN DIVISION

| | | |
|---|---|---|
| ARTHUR WILLIAMS, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV 309-055 |
| SHONTA WRIGHT, COII Prison Guard; JAMAL FOREMAN, COII Prison Guard; BRIAN OWENS, Prison Commissioner; ANTHONY WASHINGTON, Warden; RONNIE LAWRENCE, Deputy Warden; KEITH MORRIS, Chief Counselor; LARRY BUTTS, Unit Manager; TRACY JEFFERSON, Captain; and WESLEY O'NEAL, Lieutenant Supervisor, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. As explained below, Plaintiff has filed a second amended complaint, and because this second amended complaint was filed *in forma pauperis* ("IFP"), it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)

& 1915A.[1]

When Plaintiff returned his Consent to Collection of Fees Form and Prison Trust Fund Account Statement as directed by the Court at the outset of this case, Plaintiff also submitted an amended complaint. (See doc. no. 6). Before the Court could screen this first amended complaint, Plaintiff filed a motion to amend. (See doc. no. 21). The Court granted Plaintiff's motion and directed him to submit a second amended complaint, to include all of his allegations in one document. (Doc. no. 27, pp. 4-5). Plaintiff has submitted his second amended complaint (doc. no. 29), and it is this document that the Court will now screen.[2]

## I. BACKGROUND

Liberally construing Plaintiff's allegations, the Court finds the following. Plaintiff names the following individuals as Defendants: (1) Shonta Wright, a prison guard at JSP; (2) Jamal Foreman, a prison guard at JSP; (3) Anthony Washington, Warden of JSP; (4) Lieutenant Wesley O'Neal, "Lieutenant Supervisor" at JSP; (5) Larry Butts, Unit Manager at JSP; (6) Keith Morris, Chief Counselor at JSP; (6) Tracy Jefferson, Captain at JSP; (7) Ronnie Lawrence, Deputy Warden at JSP; and (8) Brian Owens, Commissioner of the Georgia

---

[1]Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay the initial fee; thus, the Court will proceed to screen Plaintiff's second amended complaint even though he has been unable to pay an initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

[2]The Court is also aware that Plaintiff has described at length various problems with the indigent prison mail system at JSP in his "Motion for Declaratory Judgment." (See doc. no. 26). While Plaintiff briefly mentions this issue in his second amended complaint (see doc. no. 29, p. 13), his "Motion for Declaratory Judgment" provides greater detail about these alleged problems. Accordingly, the Court has liberally construed the allegations in this "motion" together with those presented in his second amended complaint in describing the events giving rise to Plaintiff's claims.

2

Department of Corrections. (Doc. no. 29, pp. 1, 4). According to Plaintiff, on July 23, 2009, Defendant Wright allowed another inmate, Edward Thomas, to enter his cell without looking up Inmate Thomas's "name and picture I.D." to determine if Inmate Thomas was allowed in Plaintiff's cell. (Id. at 5). Once inside Plaintiff's cell, Inmate Thomas allegedly assaulted Plaintiff with a "steel prison lock," which Plaintiff contends was provided to him by "prison officials such as Brian Owens." (Id.). Plaintiff further alleges that after the initial assault, Defendant Foreman did not "follow procedure" when he placed Plaintiff in handcuffs and left him lying on the floor while he went to get another set of handcuffs to restrain Inmate Thomas. (Id.). While Plaintiff states that he was unconscious at this point, he relays that other inmates told him that Inmate Thomas began kicking him in the head when Defendant Foreman left to get another set of handcuffs. (Id.).

Plaintiff goes on to allege that after the July 23rd incident, Defendants Washington, Butts, Morris, Jefferson, and Lawrence came to his cell and spoke to him about the assault. (Id. at 7). Plaintiff states that later, both he and Inmate Thomas were placed in segregation pending the outcome of the investigation of the July 23rd incident. (Id.). Plaintiff maintains that on August 6, 2009, after it was determined that he was not the aggressor in the July 23rd incident, he was released from segregation. (Id.). Plaintiff states that on the day of his release from segregation, he heard Inmate Thomas screaming and threatening that he was going to kill Plaintiff once he (Inmate Thomas) was released from segregation. (Id.). Plaintiff states that he reported Inmate Thomas's statements to multiple individuals, including Defendant Lawrence, who repeatedly told him that Inmate Thomas would not be released from segregation for a long time and that he would be transferred from segregation to a different prison. (Id.).

However, according to Plaintiff, Inmate Thomas was released by Defendant O'Neal back onto Plaintiff's living unit on August 22, 2009. (Id. at 8). Plaintiff states that once he became aware of this, he told a "unit officer" that he needed to speak with a supervisor to report the problem and that he would like to go into "protective custody." (Id.). The unit officer purportedly attempted to make "some calls" and reach his supervisor by radio, to no avail. (Id.). According to Plaintiff, later that same day, Inmate Thomas "walked up behind [him] and assaulted [him] again." (Id.). Plaintiff states that he has suffered head injuries, loss of vision, and episodes of sudden loss of consciousness as a result of the two assaults. (Id. at 5, 8).

As discussed in footnote 2 above, Plaintiff briefly mentions alleged problems with the mail system for indigent prisoners at JSP in his second amended complaint. (See id. at 13). However, further details regarding this issue are provided in Plaintiff's "Motion for Declaratory Judgment."[3] (See doc. no. 26). Specifically, Plaintiff alleges that Defendant Washington began implementing new procedures with respect to the mail system in October 2009, which, according to Plaintiff, only allows indigent inmates to send out legal mail one day per week. (Id. at 3). Plaintiff further alleges that indigent inmates must wait in long lines to send out legal mail, and the "store clerk" is without the "skills or knowledge to handle legal

---

[3]In his "Motion for Declaratory Judgment," Plaintiff complains that the alleged problems with the mail system prevented him from timely filing his objections to a Report and Recommendation ("R&R"), (doc. no. 14), previously entered in this case and appears to argue that the Order (doc. no. 24) adopting the R&R should be vacated. (Doc. no. 26, p. 1). While Plaintiff states in his "motion" that his objections to the R&R are attached (id. at 2), no such objections have been submitted. Moreover, Plaintiff spends only one and a half pages of his 11-page motion referencing his objections, while the rest of the motion detailing the alleged problems with the mail system. Accordingly, the Court has liberally construed this filing as an attempt to raise a claim regarding the mail system at JSP and included the allegations contained in the "motion" in detailing events giving rise to Plaintiff's complaint.

4

mail or postal services." (Id.). Plaintiff also complains that there are no scales to weigh the outgoing legal mail and that such mail is not protected as confidential. (Id. at 4). As a result of the lack of a scale, Plaintiff alleges that some of his mail has been returned to him. (Id. at 7).

As to his exhaustion of administrative remedies regarding the events described above, Plaintiff states that he filed "many grievances" but complains that the grievance process "offers no remedy." (Id. at 3). Plaintiff further describes the grievance process as ineffective and unfair. (Id.). Plaintiff also expresses his frustration that the grievances he did file were "dismissed on any small technicality." (Id.). Notably, Plaintiff admits that he did not appeal any adverse decision to the highest possible level in the administrative process. (Id. at 4). As excuses, Plaintiff offers his contention that it is difficult to complete the grievance process because there are "so many people involved and the grievance coordinator is only seen on [a] few occasions." (Id.). Plaintiff also complains about the length of time it takes "finish an appeal" and that it sometimes takes "days to find a counselor to sign [a grievance]." (Id.). Notably, Plaintiff has filed a motion challenging the constitutionality of the exhaustion requirement (doc. no. 9), discussed in further detail below.

As relief, Plaintiff requests compensatory, punitive, and nominal damages from all Defendants. (Doc. no. 29, pp. 6, 11-12). Plaintiff also requests that steel locks be taken out of the prison and that a separation policy be put in place. (Id. at 6, 13). Finally, Plaintiff requests that the Court issue a declaratory judgment or injunction "against the state grievance . . . system" so that prison officials will respond to grievances more quickly. (Id. at 6).

## II. DISCUSSION

A. **Constitutionality of the Exhaustion Requirement**

As noted above, Plaintiff has filed a "Motion of Constitutional Challenge Question to the P.L.R.A," in which Plaintiff challenges the constitutionality of the exhaustion requirement of the of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996). (See doc. no. 9). This provision of the PLRA provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, before reaching an analysis of whether this case should be dismissed on exhaustion grounds, the Court must consider this threshold issue of the constitutionality of § 1997e(a). The crux of Plaintiff's argument is that the PLRA's exhaustion requirement discriminates against prisoners because it leaves the administrative remedy process that prisoners are required to use in order to exhaust "in the hands of [the] same prison officials whom civil actions are directed against." (Id. at 2). More specifically, Plaintiff apparently believes that it is unfair to require prisoners to put prison officials on notice of claims that may be filed against them prior to bringing a lawsuit in federal court. (Id. at 2, 4).

In considering Plaintiff's challenge, the Court begins by noting that the Supreme Court has repeatedly enforced the PLRA's exhaustion requirement. See Woodford v. Ngo, 548 U.S. 81, 93 (2006); Porter v. Nussle, 534 U.S. 516, 532 (2002). More specific to Plaintiff's particular challenge, the Supreme Court has further held that "if a law neither burdens a fundamental right nor targets a suspect class," it does not violate the Equal Protection Clause "so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620,

6

631 (1996) (citing Heller v. Doe, 509 U.S. 312, 319-20 (1993)).

Prisoners are not a suspect class. Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003). Furthermore, while it is well-settled that a prisoner has a fundamental right of access to the courts, Bounds v. Smith, 430 U.S. 817, 821 (1977), the exhaustion requirement of the PLRA does not burden this fundamental right, see Mason v. Bridger, 261 Fed. App'x 225, 230 (11th Cir. 2008) (*per curiam*) (holding that the exhaustion requirement does not violate the right of access to the courts because "[r]equiring that reasonable procedures be followed is not tantamount to barring claims from being presented . . . ."); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999) ("Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation."), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table).

Thus, § 1997e(a) does not violate the Equal Protection Clause if it is rationally related to a legitimate end. As recognized by the Supreme Court, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner lawsuits." Porter, 534 U.S. at 524. The exhaustion requirement is rationally related to this legitimate end because it affords prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 525. Indeed, "[i]n some instances, corrective action . . . might satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review

7

might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." Id.

In sum, because (1) prisoners are not a suspect class, (2) the law in question does not burden a fundamental right, and (3) the exhaustion requirement is rationally related to a legitimate end, Plaintiff's equal protection challenge to the exhaustion requirement of the PLRA fails. See Mason, 261 Fed. App'x at 229-30 (holding that dismissal of a prisoner's lawsuit for failure to exhaust did not violate the Equal Protection Clause). Accordingly, Plaintiff's "Motion of Constitutional Challenge to the P.L.R.A." should be **DENIED**. (Doc. no. 9).

B.  **Plaintiff's Failure to Exhaust his Administrative Remedies**

Having resolved this threshold issue, the Court turns to whether this case should be dismissed for failure to exhaust his administrative remedies. As noted above, § 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter, 534 U.S. at 520. Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Indeed, under the PLRA, the Court may not inquire as to whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available"

8

whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1155, 1156 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." Woodford, 548 U.S. at 93. In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. 2006) (*per curiam*) (quoting Johnson, 418 F.3d at 1155). Finally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

The administrative grievance process within the Georgia Department of Corrections is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. See SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id § VI(C)(2) & (D)(2). The SOP requires that an inmate be given a response to

9

his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

As noted above, Plaintiff admits that he did not exhaust his administrative remedies, (see doc. no. 29, p. 4), but offers several excuses for not doing so. First, Plaintiff contends that the grievance process offers no remedy and is ineffective and unfair. (Id. at 3). However, the exhaustion requirement cannot be waived, despite Plaintiff's allegations of futility and ineffectiveness. See Porter, 534 U.S. at 524; Alexander, 159 F.3d at 1325-26. Furthermore, while Plaintiff contends that the grievance process takes too long to complete (see doc. no. 29, p. 4), the Court also may not inquire into whether the grievance process is a speedy one, see Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Plaintiff further notes that his grievances were "dismissed on any small technicality." (Doc. no. 29, p. 3). Nevertheless, in order to properly exhaust and avoid procedural default of his claims, Plaintiff must meet

10

"deadlines and other critical procedural rules" of the administrative remedy process. Woodford, 548 U.S. at 90 (internal quotation omitted). Thus, the Court is not persuaded by any of Plaintiff's arguments offered as excuses for why he did not exhaust his administrative remedies.

Plaintiff also appears to contend that administrative remedies were unavailable, which is a proper subject for inquiry by this Court. See Alexander, 159 F.3d at 1326 (explaining that under the PLRA, courts are "to focus solely on whether an administrative remedy program is 'available'"). Indeed, Plaintiff states that he has only seen the grievance coordinator on "[a] few occasions" and that it takes "days to find a counselor to sign [a grievance]." (Doc. no. 29, p. 4). In this regard, the Court is aware that in order to demonstrate that administrative remedies were unavailable, Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies).

However, the Court need not further consider this issue because Plaintiff's statements elsewhere in his second amended complaint and documents attached to his "Motion for Declaratory Judgment" undermine any argument that Plaintiff's administrative remedies were unavailable. Indeed, as noted above, Plaintiff states in his second amended complaint that he filed multiple grievances and that several grievances were dismissed on what Plaintiff terms "technicalities." (Doc. no. 29, p. 3). The Court also notes that Plaintiff attaches to his "Motion for Declaratory Judgment" a copy of an informal grievance he submitted to prison officials on November 12, 2009, detailing his complaints about the mail system for indigent prisoners. (See doc. no. 26, p. 11). Thus, it is apparent that Plaintiff's administrative remedies were

11

available to him, although Plaintiff failed to see the process through to completion. In sum, the Court is not persuaded by any of the excuses offered by Plaintiff for not exhausting his administrative remedies, including any argument that his administrative remedies were not available to him.[4] Accordingly, the Court finds that Plaintiff failed to exhaust his available administrative remedies prior to filing suit, and Plaintiff's complaint should be dismissed without prejudice.[5]

---

[4]The Court is also aware of Plaintiff's statement in his "Motion of Constitutional Challenge to the P.L.R.A" that requiring prisoners to exhaust "certain claims" places their lives at risk. (Doc. no. 9, p. 4). Those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004). However, Plaintiff's non-specific allegation that requiring prisoners to exhaust "certain claims" places their lives at risk is insufficient to demonstrate that his administrative remedies were unavailable. See Boyd, 380 F.3d at 998. Indeed, Plaintiff does not allege that he has been personally threatened as a result of claims presented in his grievances, nor does he provide any details about those claims that he believes would place prisoners' lives at risk if presented in a grievance. Finally, Plaintiff does not describe with any degree of specificity any actions taken or any threats made by a prison official as a result of claims presented in a grievance. In any event, any argument that Plaintiff's administrative remedies were unavailable because of threats made by prison officials is undermined by Plaintiff's statements elsewhere in his second amended complaint and documents attached to his "Motion for Declaratory Judgment," discussed above, which demonstrate that the process was in fact available to him.

[5]The Court recognizes that the Supreme Court recently held that under the PLRA, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215 (2007). However, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Id. at 215-16; see also Clark v. Georgia Bd. of Pardons & Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). Therefore, because it is clear from the face of Plaintiff's complaint that he failed to exhaust his administrative remedies, the Court can properly recommend that Plaintiff's case be dismissed. See Anderson v. Donald, 261 Fed. App'x 254, 256 (11th Cir. 2008) (*per curiam*) (finding that the district court properly dismissed the plaintiff's complaint because the allegations in the complaint sufficed to establish that the plaintiff failed to exhaust his administrative remedies).

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's "Motion of Constitutional Challenge Question to the P.L.R.A." and "Motion for Declaratory Judgment" be **DENIED** (doc. nos. 9, 26), that this case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, and that this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 25th day of March, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE